# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG ELECTRONICS, INC. and<br>LG ELECTRONICS U.S.A., INC.,<br><br>Plaintiffs,<br><br>v.<br><br>TOSHIBA SAMSUNG STORAGE<br>TECHNOLOGY KOREA CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 12-1063-LPS-CJB |

## MEMORANDUM ORDER

Presently pending before the Court in this patent infringement action is a motion for a partial stay of the instant proceedings (the "Motion"), filed by Defendant Toshiba Samsung Storage Technology Korea Corporation ("TSST-K" or "Defendant"). (D.I. 82) With the Motion, TSST-K seeks a partial stay of the proceedings as to Plaintiffs LG Electronics, Inc. and LG Electronics U.S.A., Inc.'s (collectively, "LG" or "Plaintiffs") claims relating to two of the four patents-in-suit: United States Patent Nos. 6,101,162 (the "'162 patent") and 6,477,126 (the "'126 patent") (collectively, the "IPR patents"). (*Id.*) TSST-K argues that a partial stay should remain in force until the conclusion of pending appeals regarding the IPR patents that are currently before the United States Court of Appeals for the Federal Circuit; in these appeals, the Federal Circuit is reviewing Final Written Decisions of the United States Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB"). (*Id.*) In those Final Written Decisions, the PTAB invalidated certain claims of the IPR patents.

For the reasons stated below, the Court GRANTS the Motion as to the '162 patent, but DENIES the Motion as to the '126 patent.

I.  **BACKGROUND**

Plaintiffs filed the instant Complaint on August 22, 2012 against then-Defendant Toshiba Samsung Storage Technology Corporation ("TSST-J") and TSST-K, alleging infringement of the two IPR patents, as well as two other patents: U.S. Patent Nos. 7,380,159 and 7,380,178. (D.I. 1) In lieu of filing Answers, TSST-J and TSST-K filed respective motions to dismiss for lack of personal jurisdiction. (D.I. 16, 20) These motions were referred to the Court for resolution by Chief Judge Leonard P. Stark, (D.I. 41), and on November 5, 2014, the Court issued a Report and Recommendation recommending that TSST-J's motion be granted and that TSST-K's motion be denied, (D.I. 45). On March 19, 2015, Chief Judge Stark adopted the Report and Recommendation in its entirety. (D.I. 56)

While the motions to dismiss were pending, on December 2, 2013, TSST-K filed a petition for *inter partes* review ("IPR") of the '162 patent (claims 1-22) and the '126 patent (claims 1-4, 6-11 and 13-19). (D.I. 84, exs. A, H) In May 2014, the PTAB issued its decisions to institute IPR on the '162 patent (as to claims 1-10, 13-15 and 17-22) and the '126 patent (as to claims 1, 2, 6-11 and 13-19). (*Id.*, exs. D, J) The parties participated in oral argument before the PTAB on January 7, 2015. (*Id.*, ex. K at 6; D.I. 83 at 5)

On March 31, 2015, the PTAB issued its Final Written Decision holding the '126 patent claims 1, 2, 6-11 and 13-19 unpatentable. (D.I. 84, ex. M at 42-43) More specifically, the PTAB found that Japanese Patent App. Pub. No. H8-329610 ("Kawano") anticipated claims 1, 7, 8, 15 and 19. (*Id.* at 42; *see also* D.I. 83 at 6) The PTAB further found that claims 2, 6, 9-11, 13, 14 and 16-18 were unpatentable due to obviousness over prior art references that included Kawano. (D.I. 84, ex. M at 42-43; D.I. 83 at 6) The PTAB denied LG's motion to amend and substitute

existing claims 1, 7, 8, 15 and 19 of the '126 patent with newly proposed substitute claims 20-24, finding that LG failed to satisfy its burden to show that the proposed substituted claims were patentable. (D.I. 84, ex. M at 37, 43)

Likewise, on April 1, 2015, the PTAB issued its Final Written Decision holding '162 patent claims 1, 3-5, 7-10, 13, 17 and 18 unpatentable. (*Id.*, ex. F at 31-32) More specifically, the PTAB found that claims 1, 5, 7, 13 and 18 were anticipated by U.S. Patent No. 4,924,327 ("Seamons") and that claims 3, 4, 8-10 and 17 were obvious over prior art references that included Seamons. (*Id.* at 31; D.I. 83 at 5)

LG filed its respective Notices of Appeal of the PTAB's Final Written Decisions with the Federal Circuit on June 1, 2015. (D.I. 84, exs. G, N) The Federal Circuit docketed the appeals on July 13, 2015. (D.I. 83 at 13) At present, briefing in the appeals is scheduled to be completed in February 2016. *See, e.g., LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, No. 15-1822 (Fed. Cir.), D.I. 19.

Meanwhile, back in this Court, after the resolution of the motions to dismiss, on April 2, 2015, TSST-K filed its Answer to LG's Complaint. (D.I. 58) Chief Judge Stark held a scheduling teleconference on July 22, 2015, (D.I. 71, 79), and issued a Scheduling Order on July 29, 2015, (D.I. 81). Pursuant to that Scheduling Order, a trial date is currently set for August 14, 2017. (*Id.* at ¶ 24)

TSST-K filed the instant Motion on August 3, 2015. (D.I. 82) On August 31, 2015, LG filed its answering brief, in which it opposed TSST-K's request for a stay concerning the '126

patent, but noted that it did not oppose the stay with respect to the '162 patent. (D.I. 92)[1] The Motion was fully briefed as of September 11, 2015. (D.I. 98) The parties have stipulated and consented to the Court conducting any and all proceedings and entering a final order as to the instant Motion, (D.I. 87), a stipulation that was approved by the District Court on August 20, 2015.

## II.  STANDARD OF REVIEW

A court has discretionary authority to grant a motion to stay. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). This Court has typically considered three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage. *See, e.g., Round Rock Research LLC v. Dole Food Co. Inc.*, Civil Action No. 11-1239-RGA, 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012); *Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 09-865-LPS, 2010 WL 5149351, at *1 (D. Del. Dec. 13, 2010). These factors are discussed in greater detail below.

## III.  DISCUSSION

### A.  Simplification of Issues for Trial

In opposing a stay as to the '126 patent, LG argues that a stay at this stage will not result in a simplification of issues for trial. (D.I. 92 at 1) It points out that it intends to assert six claims of the '126 patent in this case—three claims that have been invalided by the PTAB and

---

[1] As a result, the Court will below focus its analysis on whether a stay should be granted as to the '126 patent. It will, as previously noted above, grant a stay with respect to the '162 patent.

4

that are before the Federal Circuit on appeal (claims 1, 2 and 8) and three claims that were not a part of the PTAB proceeding and that are not at issue in the appeal (claims 3, 4 and 5). (*Id.* at 3) Claims 3, 4 and 5 of the '126 patent depend on claim 1, an independent claim. (D.I. 1, ex. 4 at cols. 5-6) Plaintiffs explain that since they intend to assert claims 3, 4 and 5 regardless of the Federal Circuit's decision, the "only question is whether the litigation with respect to the '126 patent will cover more than" those three claims; "[i]f the Federal Circuit affirms the [PTAB] decision, then the litigation will not cover additional claims [but] if the decision is reversed, then the litigation will cover three additional claims (claims 1, 2 and 8)." (D.I. 92 at 3)

The Federal Circuit's decision will certainly have an important impact on the six claims of the '126 patent at issue here. For one thing, if the Federal Circuit affirms the PTAB decision, three of the six asserted claims will not be in the case, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013), and that will simplify the proceedings a bit. And since the Federal Circuit reviews the PTAB's decisions for "'substantial evidence,'" a somewhat "'deferential'" standard, it might reasonably be said that the likelihood of the PTAB's decision as to claims 1, 2 and 8 being overturned is low. *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, Case No. 12-cv-05501-SI, 2015 WL 435457, at *3 (N.D. Cal. Feb. 2, 2015) (citation omitted). Were the PTAB's decision affirmed, any case-related efforts spent on those claims in the meantime would be wasted.

Moreover, regardless of whether the appellate court affirms or reverses the PTAB's decision, its analysis could provide greater clarity as to claim construction-related or invalidity-

related issues that might arise in this case.[2] *See id.* at *3 ("Furthermore, regardless of the outcome of the appeals from the IPR proceedings, this Court may benefit from the Federal Circuit's analysis of the issues."). For example, in its opening brief before the Federal Circuit, LG spends eight pages arguing that the PTAB wrongly construed claim 1 of the '126 patent—the claim from which claims 3, 4 and 5 (as well as claims 2 and 8) depend. *See, e.g., LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, No. 15-1822 (Fed. Cir. Oct. 9, 2015), D.I. 16 at 27-35. At issue there is the construction of a claim term ("first mode") and its relationship with another claim term ("second mode")—terms that appear not only in claim 1, but in some form in each of the other five claims. *Id.* Even were the Federal Circuit to reverse the PTAB's decision, what the Court says about the proper construction of claim 1 will likely inform the claim construction process in this case as to all of the six claims potentially at issue. It will also help to provide greater clarity on the question of what conduct would, in fact, infringe these claims and what prior art would render the claims invalid. *Cf. Princeton Dig. Image Corp. v. Konami Dig. Entm't, Inc.*, Civil Action Nos. 12-1461-LPS-CJB, 13-335-LPS-CJB, 2015 WL 219019, at *3 (D. Del. Jan. 14, 2015). It is also possible that the Federal Circuit's ruling as to claims 1, 2 and 8 (and whether they are invalid over Kawano and other prior art) will impact the parties' invalidity positions as to claims 3, 4 and 5. *Cf. id.* (noting that a finding by the PTAB that "independent claims . . . are invalid could simplify the invalidity analysis of dependant claims").

With that said, and though the *content* of the Federal Circuit's decision will likely help

---

[2] LG represents that it will not challenge on appeal the PTAB's denial of its motion seeking to amend the claims of the '126 patent, such that "the Federal Circuit will either reverse or affirm with respect to the validity of the claims, but the scope of those claims will not change." (D.I. 92 at 5)

simplify this case in various ways, less clear from Defendant's briefing is how *a stay* regarding the '126 patent pending the conclusion of the appeal will promote the simplification of this proceeding. Key to this analysis is the fact that the parties all suggest that the Federal Circuit's decision is likely to be issued in or around May or June of 2016. (D.I. 92 at 5-6; D.I. 98)

The area where it seems most likely that the absence of a stay could affect the instant proceedings relates to the claim construction process. The *Markman* hearing in the instant case is currently scheduled for June 27, 2016, (D.I. 81 at ¶ 16), and claim construction issue identification and briefing will occur from February through May of 2016, (*id.* at ¶¶ 14-15). Because claim terms in at least claims 1, 3, 4 and 5 will be at issue in that *Markman* proceeding, (D.I. 92 at 6), were the Federal Circuit's decision handed down in May or June of next year—or even after the June 27, 2016 *Markman* hearing—then that decision (depending on its content) could alter the parties' or this Court's view of the appropriate way to interpret claim 1's terms (and terms in claims that depend on claim 1). (D.I. 98 at 2) That, in turn, could necessitate some backtracking, or reproduction of claim construction efforts already expended in the case.

Less clear is what impact the absence of a stay would have on the discovery process. Here, document production (absent extensions) is set to be substantially completed by March 2016, but fact discovery does not close until November 2016. (D.I. 81 at ¶ 10) LG notes that if the Federal Circuit affirms the PTAB's finding that one or more of claims 1, 2 or 8 are invalid, that "may result in *some* measure of efforts which may not be relevant" to the instant case. (D.I. 92 at 5 (emphasis in original)) But it claims that a Federal Circuit decision by mid-2016 should not impact the deposition process, for example, which will likely be back-loaded into the later part of next year. (*Id.*) Although TSST-K responded that work on "discovery responses [and]

7

document production" would be affected in the absence of a stay, it was unspecific as to what that impact would look like or what its magnitude might be. (D.I. 98 at 2-3)

In the end, it is clear that the culmination of the Federal Circuit appeal will help to streamline this case. And TSST-K has demonstrated that a stay could help (at least to some degree) minimize disruption to the case schedule while awaiting that decision. And so, the Court finds that this factor favors a stay. But TSST-K's argument here would have been stronger had it done more to explain how the absence of a stay would be likely to negatively impact the discovery process.

### B.     Status of Litigation

In assessing the status of the litigation, the court considers, among other things, "whether discovery is complete and whether a trial date has been set." *Neste Oil Oyj v. Dynamic Fuels, LLC*, Civil Action No. 12-662-GMS, 2013 WL 424754, at *1 (D. Del. Jan. 31, 2013) (internal quotation marks and citation omitted). Staying a case in its early stages in favor of an IPR proceeding (or an appeal of the same) can advance judicial efficiency, and prevent the court and parties from expending resources on claims that may later be rendered invalid. *See Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, C.A. No. 12-cv-1107 (GMS), 2014 WL 1369721, at *6 (D. Del. Apr. 7, 2014). On the other hand, when a request to stay a case comes after discovery is complete or nearly complete, or after the Court and the parties have expended significant effort on the litigation, the principle of maximizing the use of judicial and litigant resources may be best served by seeing the case through to its conclusion. *SenoRx, Inc. v. Hologic, Inc.*, Civ. Action No. 12-173-LPS-CJB, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013). Here, assessing what "stage" this case is at is not as straightforward as it normally would be.

Defendant rightly notes, for example, that at the time the Motion was filed in early August 2015, the most burdensome aspects of the case were still ahead. (D.I. 83 at 12) A schedule had just been entered on July 29, 2015. (D.I. 81) Pursuant to that schedule, a *Markman* hearing is not set to occur until June 2016, fact discovery does not close until November 2016, and a trial will not occur until August 2017—close to two years away. (*Id.*) And it seems undisputed that at the time of the Motion's filing, very few documents had been produced in discovery. Viewed in terms of where the parties are in the case schedule, the matter is undoubtably in its early stages.

But viewed differently, the case is not in its early stages at all. The case was filed in August 2012, over three years ago. By March 2013, in lieu of answering the Complaint, TSST-K and TSST-J filed their motions to dismiss. Those motions were pending with the Court for a lengthy period of time, until late 2014, and with the District Court until March 2015. (D.I. 45, 56) And because this case was filed prior to the June 2014 issuance of Chief Judge Stark's "Revised Procedures for Managing Patent Cases[,]" *see* Honorable Leonard P. Stark, Revised Procedures for Managing Patent Cases (June 18, 2014), *available at* http://www.ded.uscourts.gov/judge/chief-judge-leonard-p-stark (follow "New Patent Procedures" tab; then download "Patent Procedures" document), a case schedule was not entered until the motions were resolved. Viewed in terms of how long it has been pending, LG's case is not at a particularly "early" stage at all, as LG has been waiting to have its infringement claims adjudicated for some time. Indeed, the District Court highlighted this very concern at the scheduling teleconference held earlier this year, when it noted (in deciding to sever TSST-K's counterclaims) that "it has taken quite some time for the LG case to get started, and I see no

reason to further delay or in any way risk delaying the start of what began as the LG case on four of LG's patents." (D.I. 91 at 21)

Additionally (and relatedly), a not insignificant amount of judicial and party-related resources have been expended in the case.[3] For one thing, the Court expended time and effort in resolving the motions to dismiss. (D.I. 45-50, 56) Although a case schedule had not yet been entered, LG began serving documents requests back in January 2015. (D.I. 93 at ¶ 11) After TSST-K filed an Answer, the parties skirmished a bit over the substance of certain TSST-K counterclaims, (D.I. 75), a dispute that they then resolved, (D.I. 78). The District Court then held a scheduling teleconference, during which it was required to resolve a number of schedule- and case-related disputes, which included its decision to sever TSST-K's counterclaims altogether. (D.I. 91)

In the end, under these unique circumstances, both sides' arguments have force. The Court concludes that they roughly cancel each other out, and that the "status of the litigation" factor neither favors nor disfavors a stay.

### C. Undue Prejudice

This Court has often analyzed whether a non-movant would suffer undue prejudice (and whether a movant would gain an unfair tactical advantage) if a stay is granted by examining a number of subfactors. TSST-K made arguments as to some of those subfactors, such as the

---

[3] *See, e.g., SenoRx, Inc.*, 2013 WL 144255, at *6 (noting that by the time the motion to stay was filed, the fact that the case was six months old and the parties had "expended more than a *de minimis* amount of effort on the litigation" mitigated against a grant of a stay); *SoftView LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *4 (D. Del. July 26, 2012) (noting that the fact that "[s]ubstantial time and resources have been devoted in this case to scheduling and the resolution of discovery disputes, as well as Defendants' motions to sever, stay and dismiss" worked against a stay).

timing of the request for a stay, the status of the proceeding that the instant case would be stayed in favor of, and the relationship of the parties. *SenoRx, Inc.*, 2013 WL 144255, at *6. In addition to discussing those subfactors, LG also makes some additional arguments as to how it will suffer undue prejudice if a stay is granted. (D.I. 92 at 7-8) The Court examines all of these arguments in turn.

### 1. Timing of the Request for a Stay

As to the timing of the stay request, this Court has explained that in some sense, a motion to stay pending a review of patent claims can always be said to seek a tactical advantage. That is because it "would not have been filed but for [a movant's] belief that the granting of a stay would [be to its] benefit[.]" *Round Rock*, 2012 WL 1185022, at *2. However, if the timing of the stay request appears less focused on facilitating an orderly review of patent claim validity, and more focused on simply disrupting the progression of the non-movant's case for disruption's sake, that can weigh against a stay. *See Belden Techs. Inc. v. Superior Essex Commc'ns LP*, Civ. No. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010) (finding that requests for reexamination made 17 to 20 months after the lawsuit was initiated, followed by a motion to stay filed eleven days before trial, gave rise to such an inference); *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ.A. 01–557JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003) (denying a motion to stay and noting that "the fact that the instant motion was filed after the close of discovery and weeks before the commencement of the scheduled trial date" supported the conclusion that delay would occasion undue prejudice).[4]

---

[4] *See also Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, Civil Action No. 12-1461-LPS-CJB, Civil Action No. 13-335-LPS-CJB, 2014 WL 3819458, at *5 (D. Del. Jan. 15, 2014) (noting that this subfactor weighed in favor of a stay where the "instant cases are

11

Here, the instant Motion was filed by Defendant at an understandable point in the case, one that does not suggest unfair tactics. TSST-K filed the Motion 12 days after the scheduling teleconference was held—at a point in the case where it would need to take action if it wanted to assert that a schedule should not be entered. And the Motion came shortly after LG had filed its notices of appeal in the Federal Circuit—in other words, at the time when it was now certain that there would in fact be an appeal of the PTAB's decisions.

While TSST-K could have acted a bit sooner (such as by filing the Motion prior to the scheduling teleconference), (D.I. 92 at 8), in the end, this subfactor weighs in favor of a stay.

### 2. The Status of the Review Proceedings

As noted above, Plaintiffs filed their notices of appeal of the PTAB's decisions on June 1, 2015, and the appeals were docketed on July 13, 2015. (D.I. 83 at 13; D.I. 84, exs. G, N) Both parties agree that on average, the Federal Circuit rules on such appeals 10 and a half months from the time the appeal is docketed. (D.I. 83 at 14; D.I. 92 at 6) And so, using that logic, the parties assert that the appeal is expected to conclude in or around May 2016 and June 2016. (*See, e.g.*, D.I. 92 at 6)

The Court agrees with TSST-K that, were this subfactor viewed only from the perspective of how long the appellate case is expected to run, it would favor the movant. In a vacuum, it does not seem long to wait for another six or seven months for the appeal to conclude before moving forward with LG's infringement claims as to the '126 patent. But this case cannot be viewed in a vacuum. Instead, it must be viewed in its actual context. And there, delaying the

---

not at the very late stages of litigation . . . nor did these [stay-related] filings come after [movants] suffered an adverse case event").

action (in part) by many more months—in addition to the real delay LG has already experienced—is problematic.

Moreover, as noted above, the relatively short remaining duration of the appeal can actually be said to *favor* LG's position. Put differently, to the extent the appeal is likely to conclude before deposition discovery goes forward—and well before fact discovery closes, expert discovery begins and case dispositive motions are filed—then there is a greater chance that the appellate decision could be absorbed by the parties with minimal disruption, even while the case schedule moves forward.

For these reasons, this subfactor weighs against a stay.

### 3. The Relationship of the Parties

The Court "hesitates to grant stays where the parties are direct competitors." *Bonutti Skeletal Innovations*, 2014 WL 1369721, at *4. Courts have recognized that when the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting that infringement has occurred, including the potential for loss of market share and an erosion of goodwill. *See, e.g.*, *SenoRx, Inc.*, 2013 WL 144255, at *7 (citing *Nat'l Prods., Inc. v. Gamber-Johnson LLC*, No. 2:12-cv-00840, 2012 WL 3527938, at *2-3 (W.D. Wash. Aug. 14, 2012)).

In this case, it does not appear disputed that both sides are two of "numerous competitors in the optical disc drive market[.]" (D.I. 92 at 8) Perhaps in light of this very crowded field, TSST-K asserts that any delay from a stay can be adequately compensated, if warranted, from increased money damages. (D.I. 83 at 14) Although LG points to other forms of prejudice it will suffer if a stay is granted, which will be addressed below, it does not assert that its status as a

competitor will cause damage in the marketplace that cannot fully be redressed by money. (D.I. 92 at 7)

This subfactor thus weighs in favor of a stay.

### 4. Other Issues

LG suggests that it will face two other forms of prejudice if a stay is granted. First, it cites the risk that evidence will grow stale—noting by way of example that in the time since the case was filed, two of the four inventors of the patents-in-suit (including an inventor of the '126 patent) have retired. (D.I. 92 at 7-8; D.I. 93 at ¶ 9) Second, it notes that LG licenses the patents-in-suit to many companies in the optical disc drive market, and that several of these agreements expire in 2015 and 2016; further delay, LG states, might harm its ability to license the patents as valuable assets in the future. (D.I. 92 at 8; D.I. 93 at ¶ 10)

LG's assertions here could have been supported by a more robust evidentiary record (e.g., they tell the Court little about how the fact of the particular inventors' retirement might put at risk their memory or ability to testify, nor about the magnitude of the licensing agreements that might be affected by any delay). But they do put into somewhat sharper relief how further delay might negatively impact LG in this case (a case filed in 2012, and one concerning a dispute over a license agreement that expired in 2010)—as compared, for example, to a case filed just this year.

Therefore, the Court finds that the risk of "other forms" of prejudice to LG militate against a stay.

### 5. Conclusion

The "undue prejudice"-related subfactors are mixed. The Court is most concerned,

14

however, with the prospect of further pausing this action and the prejudice this could cause to LG. This concern tips this factor to one that counsels against a stay.

## IV. CONCLUSION

The potential for simplifying the issues favors a stay, while the prospect for causing undue prejudice to the non-movant weighs against a stay. Due to the unique history of this case, the "status of the litigation" factor is neutral. And so, this is a decision that could reasonably go either way.

Here, taking into account all of the above, the Court will exercise its discretion and DENY the Motion as it relates to the '126 patent.[5] Keeping this case on its current scheduling track, to as great an extent as possible, is important in light of the case's age. And there are options short of a stay that would allow the case schedule to move forward, but address the impact of the Federal Circuit's forthcoming decision. The parties could, for example, work with this Court, if need be, to alter the dates relating to claim construction, so as to minimize the chance that an appellate decision will affect that process. In the end, as to the '126 patent, the Court concludes that those types of efforts will better serve the case than will a stay.

Dated: December 11, 2015

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[5] As there is no dispute that the case should be stayed as to the '162 patent pending the resolution of the appeal regarding that patent, the Court will GRANT the Motion in that respect.

15